**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**EXCELSIOR FUNDS, INC. and EXCELSIOR**
**FUNDS TRUST,**

                    **Plaintiffs,**          **06 Civ. 5246 (JGK)**

          **- against -**                    <u>**OPINION AND ORDER**</u>

**JP MORGAN CHASE BANK, NATIONAL**
**ASSOCIATION,**

                    **Defendant.**
————————————————————————————

**JOHN G. KOELTL, District Judge:**

     The plaintiffs have moved to remand this action to state
court.  The plaintiffs, Excelsior Funds, Inc. ("EFI") and
Excelsior Funds Trust ("EFT"), filed this action in the New York
State Supreme Court, New York County, alleging various state
causes of action against the defendant, JP Morgan Chase Bank,
N.A. ("JPMC").  JPMC removed the action to this Court pursuant
to 28 U.S.C. § 1441(a), claiming that removal was proper based
on diversity of citizenship, 28 U.S.C. § 1332(a).  Following
removal, the plaintiffs timely filed the present motion pursuant
to 28 U.S.C. § 1447(c) to remand the action to state court,
arguing that removal was improper under 28 U.S.C § 1441(b)
because JPMC, a national banking association, both is and was at
the time of removal a citizen of the State of New York, the
state in which the action was brought, because its principal
place of business is located in New York.

The central issue on this motion is whether a national bank is a citizen of the state in which its principal place of business is located, as well as the state in which its main office is located, as designated in its articles of association.[1] As explained below, a national bank is a citizen only of the state in which its main office is located, and not the state in which its principal place of business is located, if that state differs from the location of its main office.  Therefore, removal was proper in this case, and the plaintiff's motion to remand is **denied**.

### I.

The following facts are not disputed for the purposes of the pending motion.  The plaintiff, EFI, is a corporation that is "organized and existing under the laws of the State of Maryland."  (Compl. ¶ 2.)  The plaintiff, EFT, is a business trust that is "organized and existing under the laws of the State of Delaware."[2]  (Compl. ¶ 3.)  The defendant, JPMC, is a

----

[1] A national banking association is a federally chartered corporation authorized to "carry on the business of banking."  12 U.S.C. § 24 (Seventh). When a national banking association is formed, the "place where its operations of discount and deposit are to be carried on" (the bank's "main office") must be specified in the bank's organization certificate and articles of association.  See Wachovia Bank, N.A. v. Schmidt, 126 S. Ct. 941, 945 n.1 (2006) (citing relevant statutory and regulatory provisions). Changes to the location of the main office are made by amending the bank's articles of association.  Id.

[2] At oral argument on November 2, 2006, the plaintiffs' counsel was asked whether the plaintiffs' principal places of business corresponded to the states in which these entities were "organized and existing under."  After argument the plaintiffs provided a supplemental letter, dated November 8, 2006, that stated that at the time of filing and the time of removal, the

national banking association with its main office in the State

of Ohio, as designated in its articles of association.  As

stipulated, JPMC's principal place of business is in New York.

## II.

The plaintiffs argue that removal was improper pursuant to

28 U.S.C. § 1441(b).  Section 1441(b) provides:

> Any civil action of which the district courts have
> original jurisdiction founded on a claim or right
> arising under the Constitution, treaties or laws of
> the Untied States shall be removable without regard to
> the citizenship or residence of the parties.  Any
> other such action shall be removable only if none of
> the parties in interest properly joined and served as
> defendants is a citizen of the State in which such
> action is brought.

Because the Court's jurisdiction is based solely on diversity of

citizenship, if the defendant was a "citizen" of New York at the

time of removal, the state in which this action was brought,

then removal was improper.[3]  The plaintiffs argue that JPMC, a

_____

plaintiffs maintained their "principal executive offices" in New York,
California, and Connecticut.  The letter is ambivalent as to where precisely
the plaintiffs' principal place of business was at the time of filing and
removal.  The letter states only that the principal place of business "is now
in California," while maintaining that the principal place of business was
"formerly located at various times in New York and Connecticut."  In
addition, according to a letter from plaintiffs, dated November 21, 2006, the
Excelsior Funds Trust has a number of individual trustees, which are
residents of various states, including New York, Virginia, California,
Florida, and Connecticut.  However, there is no indication that any of these
individual trustees is a resident or citizen of Ohio.

[3]  The plaintiffs do not dispute that the Court has original jurisdiction of
this matter.  There is, however, some question whether diversity of
citizenship would exist if the defendant's citizenship included New York as
its principal place of business.  The plaintiffs were incorporated under the
laws of Delaware and Maryland respectively.  At the time the action was
brought and at the time the action was removed, the executive offices of the
plaintiffs were located in New York, California, and Connecticut.  Moreover,
several of the individual trustees are residents of New York.  See supra note

3

national bank, both is and was at the time of removal a New York citizen because it maintains its principal place of business in New York.  The citizenship of national banks is defined in 28 U.S.C. § 1348, which provides in pertinent part:  "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."[4]

### A.

In Wachovia Bank, N.A. v. Schmidt, the Supreme Court held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of

---

2.  However, if the principal place of business of the defendant JPMC is not a basis for its citizenship, then complete diversity exists because the defendant's main office, as listed in its articles of association, is Ohio, and the plaintiffs are not—under any test—citizens of Ohio.

On the other hand, the provision, on which the plaintiffs rely, that limits removal to defendants that are not citizens of the state, is not "jurisdictional in the true sense." See Woodward v. D.H. Overmeyer Co., Inc., 428 F.2d 880, 882–83 (2d Cir. 1970) (Friendly, J.).  The portion of § 1441(b) at issue here is a procedural rule as opposed to a jurisdictional rule and thus presents a question of a lesser order.  See Barnett v. Turner Constr. Co., No. 02 Civ. 6863, 2003 WL 329055, at *1 (S.D.N.Y. Feb. 13, 2003) (memorandum opinion); see also Korea Exchange Bank, New York Branch v. Trackwise Sales Corp., 66 F.3d 46, 48–49 (3d Cir. 1995).

[4]  The complete text of § 1348 is as follows:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

association, is located." 126 S. Ct. 941, 945 (2006). The
defendant argues that this holding precludes a finding that a
national bank's principal place of business provides an
independent basis for establishing citizenship under § 1348.
The plaintiffs, on the other hand, argue that the Supreme Court
did not confront whether a bank may also be "located" in the
state of its principal place of business and that the question
remains open after Wachovia Bank. Therefore, the first issue is
whether the Supreme Court's decision in Wachovia Bank
conclusively resolved this issue.

1.

In Wachovia Bank, a group of South Carolina citizens sued
Wachovia Bank, a national banking association, in a South
Carolina state court alleging fraud. 126 S. Ct. at 946. In
response, Wachovia filed an action against those South Carolina
citizens in the United States District Court for the District of
South Carolina seeking to compel arbitration and asserting
diversity of citizenship as the sole basis for the court's
jurisdiction. Id. Wachovia's main office, as designated in its
articles of association, was located in North Carolina. Id. at
945. Its principal place of business was also in North
Carolina. See id. at 951 n.9. However, Wachovia operated
branch offices throughout the United States, including in South
Carolina, the state of citizenship for the plaintiffs in the

state action, the respondents in Wachovia's federal action to compel arbitration ("plaintiffs-respondents").  Id. at 945-46.

After the district court denied Wachovia's motion on the merits, the Fourth Circuit Court of Appeals vacated the judgment and remanded the case to the district court with instructions to dismiss because it determined that the district court lacked subject matter jurisdiction.  Id. at 946.  The Court of Appeals interpreted the word "located" in § 1348 "in accordance with its ordinary meaning of 'physical presence'" and held that "a national banking association is 'located'... in any state where it operates branch offices."  Wachovia Bank, N.A. v. Schmidt, 388 F.3d 414, 432 (4th Cir. 2004).

The Courts of Appeals were divided on this issue. Consistent with the Fourth Circuit Court of Appeals, the Second Circuit Court of Appeals had noted in dictum that "a national bank... by statute is deemed to be a citizen of every state in which it has offices."  World Trade Center Prop., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 161 (2d Cir. 2003).

The Fifth and Seventh Circuit Courts of Appeals rejected the view that a national bank was a citizen of every state in which it maintained a branch office.  See Horton v. Bank One, N.A., 387 F.3d 426, 429 (5th Cir. 2004); Firstar Bank, N.A. v. Faul, 253 F.3d 982, 984-85 (7th Cir. 2001).  These courts found that a national bank's citizenship should be the same as that of

6

a similarly situated state bank and state corporation, as described in 28 U.S.C. § 1332(c)(1), namely the state of incorporation and the state where the corporation had its principal place of business. Therefore, these courts determined generally that a national bank is a citizen of, first, the state these courts found to be the national banking analogue to place of incorporation and, second, the state where the bank's principal place of business is located.[5] See Horton, 387 F.3d at 436; Firstar, 253 F.3d at 993.

The Supreme Court granted Wachovia's petition for writ of certiorari "to resolve the disagreement among Courts of Appeals on the meaning of § 1348." Wachovia Bank, 126 S. Ct. at 946. In discussing the question presented, the Supreme Court explained:

> The question presented turns on the meaning, in § 1348's context, of the word "located." Does it signal, as the petitioning national bank and the United States, as amicus curiae, urge, that the bank's citizenship is determined by the place designated in the bank's articles of association as the location of its main office? Or does it mean, in addition, as respondents urge and the Court of Appeals held, that a national bank is a citizen of every State in which it maintains a branch?

Wachovia Bank, 126 S. Ct. at 945.

---

[5] There was some question, even after these decisions, as to what the national banking analogue to the place of incorporation in § 1332(c)(1) was. Firstar determined that the national banking analogue to place of incorporation was the state listed in the bank's organization certificate, but Horton suggested that the main office location, as designated in the bank's articles of association, might offer a closer analogy. See Horton, 387 F.3d at 431 n.26.

Based on the facts of the case, the main issue confronting the Court in Wachovia Bank was whether, for § 1348 purposes, a national bank was "located" in, and thus a "citizen" of, every state in which it maintained a branch office.  If Wachovia was a South Carolina citizen because of its branch offices in the state, then the district court lacked subject matter jurisdiction.  However, if Wachovia was not a South Carolina citizen, the district court possessed subject matter jurisdiction because Wachovia would be a citizen of some state "different" from the state in which the plaintiffs-respondents were citizens.  See 28 U.S.C. § 1332(a)(1) (stating as one requirement for diversity of citizenship that the suit be between "citizens of different States").  That "different" state was easily established because Wachovia's main office and principal place of business were both located in North Carolina, and the plaintiffs-respondents were citizens of South Carolina. Unlike the present case, the Supreme Court did not have to decide whether Wachovia was a citizen only of the state in which its main office was located or also of the state in which its principal place of business was located.

The petitioner, Wachovia Bank, and the Solicitor General, on behalf of the United States and the Office of the Comptroller of the Currency ("OCC"), as amicus curiae, urged the Supreme Court to apply a test focusing on main office location.  See

Wachovia Bank, 126 S. Ct. at 945.  Wachovia and the United States also made it clear that, based on the facts of the case, it was unnecessary for the Court to resolve whether a national bank was also "located" in the state in which it maintained its principal place of business.  See, e.g., Brief for the Petitioner, Wachovia Bank, 126 S. Ct. 941 (No. 04-1186), at 9, 41; Brief for the United States as Amicus Curiae Supporting Petitioner, Wachovia Bank, 126 S. Ct. 941 (No. 04-1186), at 26 n.9.

**2.**

The Supreme Court held that a national bank, for § 1348 purposes, is a citizen of the state where its main office, as designated in its articles of association, is located.  Wachovia Bank, 126 S. Ct. at 945.  The Court did not mention "principal place of business" in its holding.  There is also no language elsewhere in the decision to indicate that the Court intended, through its holding, to resolve the issue of whether a national bank is also "located" in the state where it maintains its principal place of business.

However, the parties both rely on footnote nine, which discussed this issue.  Having generally accepted that the legislative purpose underlying § 1348 was to achieve jurisdictional parity between national and state banks, the Court observed:

>To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. See Horton, 387 F.3d, at 431, and n. 26; Firstar Bank, N.A., 253 F.3d, at 993-994. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.[6]

Wachovia Bank, 126 S. Ct. at 951 n.9. The plaintiffs argue that this language expressly leaves open the issue of whether principal place of business may be used to establish a national bank's citizenship. The plaintiffs also argue that in "citing Horton with approval it is arguable that the Court agreed with its holding..." (Pl.s' Mem. at 8.) The defendant responds that the Supreme Court effectively rejected the position of Horton and Firstar with respect to principal place of business when it noted the absence of an express reference in § 1348 to principal place of business.

The Supreme Court certainly did not, as the plaintiffs suggest, endorse the "principal place of business" test

---

[6] The defendant represents that it is only aware of two national banks—JPMC and Wells Fargo—where the state of principal place of business is different from the state of the national bank's main office.

articulated in <u>Horton</u> and <u>Firstar</u>.  On the other hand, while the
footnote favors the defendant's position, it is difficult to
read the footnote, even together with the Court's holding, as
conclusively rejecting the possibility that a national bank is
also a citizen of the state in which it has its principal place
of business.  The language is inconclusive and it would have
been unnecessary, based on the facts of the case, for the
Supreme Court to decide the issue.  This footnote, therefore,
does not resolve the question of whether the term "located," for
§ 1348 purposes, includes a national bank's principal place of
business.  Yet, at the same time, the fairest reading of
footnote nine is that the Supreme Court expressed skepticism
over whether the term "located" in § 1348 included a national
bank's "principal place of business," in view of the absence of
such term in the statute.

**B.**

        For the reasons discussed below, the Court finds that a
national bank is not a citizen of the state where its principal
place of business is located, to the extent that state is
different from the state where the national bank's main office
is located, as designated in its articles of association.[7]

---

[7] After <u>Wachovia Bank</u>, several Courts of Appeals have cited the Court's
holding that a national bank is a citizen of the state in which its main
office, as set forth in its articles of association, is located.  However,
those cases did not have to decide whether the principal place of business
was also a basis for citizenship of a national bank, and none of these cases

**1.**

Section 1348 provides that a national bank is a citizen of the state where it is "located."  Because Wachovia Bank did not conclusively resolve whether the term "located" applies to a national bank's principal place of business, the issue is whether "located" in § 1348 should be interpreted to include a national bank's principal place of business as a basis for citizenship.  "Statutory analysis begins with the text and its plain meaning, if it has one." Green v. City of New York, 465 F.3d 65, 78 (2d Cir. 2006) (quoting Gottlieb v. Carnival Corp., 436 F.3d 335, 337 (2d Cir. 2006)).  If the statute is ambiguous, courts turn to canons of construction to resolve the ambiguity. Id.  If canons of construction do not resolve the ambiguity, courts must then examine the legislative history.  Id.  In this case, the Supreme Court's analysis of § 1348 in Wachovia Bank guides the construction of this statute.

Turning first to the statute's plain meaning, as the Supreme Court explained, "[t]here is no enduring rigidity about the word 'located.'" Wachovia Bank, 126 S. Ct. at 949.  "[T]he term 'located,' as it appears in the National Bank Act, has no fixed, plain meaning." Id. at 948–49.  The Supreme Court

---

examined this particular issue.  See, e.g., See Halifax Corp. v. Wachovia Bank, N.A., No. 05-1952, 2006 WL 1818202, at *1 (4th Cir. June 28, 2006) (unpublished opinion); Hicklin Engineering, L.C. v. R.J. Bartell, 439 F.3d 346, 348 (7th Cir. 2006); Hinton v. Wachovia Bank of Del. Nat'l Ass'n, No. 05-5750, 2006 WL 1751293, at *6 n.6 (6th Cir. June 27, 2006) (unpublished opinion).

therefore determined that the term "located" in § 1348 lacks a plain, unambiguous meaning.  See id.

The Supreme Court also rejected the applicability of several tools of construction that the Fourth Circuit Court of Appeals relied upon in interpreting the term "located"—the principle that different words used in the same statute should have different meanings and the in pari materia canon.  See id. at 948.  Instead, the Supreme Court examined the history behind § 1348 and relied on that history to understand the purpose of the statute and clarify the meaning of the term "located."  See id. at 946–48, 950–51.  It is therefore necessary to turn to § 1348's legislative history to clarify its otherwise ambiguous meaning.  See, e.g., Horton, 387 F.3d at 429 ("The language of section 1348 is therefore ambiguous, and this court will look to legislative history to clarify the purpose of the statute." (internal quotation marks omitted)).

In Wachovia Bank, the Supreme Court traced the legislative history of § 1348.  Wachovia Bank, 126 S. Ct. at 946–48.  The current version of § 1348 was created by an Act of June 25, 1948, Pub. L. No. 80-773, 62 Stat. 933.  As the Supreme Court explained, § 1348's statutory predecessors evinced an intent on the part of Congress to place national banks "on the same footing as the banks of the state where they were located," Wachovia Bank, 126 S. Ct. at 947 (quoting Leather Mfrs. Bank v.

13

Cooper, 120 U.S. 778, 780 (1887)), and to "limit the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks were so limited," id. (internal alterations and ellipses omitted) (quoting Mercantile Nat'l Bank at Dallas v. Langdeau, 371 U.S. 555, 565-66 (1963)).[8]  Section 1348 generally maintained these purposes. See generally Wachovia Bank, 126 S. Ct. at 951-52; see also Horton, 387 F.3d at 430-31.  At the time § 1348 was enacted, a state bank was a citizen of only one state, the state in which it was incorporated.  Thus, allowing a national bank to be sued in a single state in which it was located created jurisdictional parity between such a bank and a state bank.

---

[8] Originally, when Congress authorized suits against national banks in 1863, it created federal jurisdiction for all suits by and against national banks on the basis of their federal charter, without regard to diversity, amount in controversy, or the existence of a typical federal question.  See Wachovia Bank, 126 S. Ct. at 946-47; Act of Feb. 25, 1863, § 59, 12 Stat. 681. National banks, under the 1863 enactment, had much broader access to the federal courts than state banks or individual citizens.  Id. at 947. Thereafter, Congress passed legislation in 1882 that limited a national bank's access to the federal courts to that which was the "same as, and not other than" that of "banks not organized under any law of the United States..."  See Act of July 12, 1882, § 4, 22 Stat. 163.  This measure eliminated federal court jurisdiction for national banks solely "on the ground of their Federal origin."  Wachovia Bank, 126 S. Ct. at 947 (quoting Petri v. Commercial Nat'l Bank of Chicago, 142 U.S. 644, 649 (1892)).  In 1887, Congress first used the term "located" (now a part of § 1348) in a statute defining the citizenship of national banks and determined that national banks shall "be deemed citizens of the States in which they are respectively located...."  See Act of March 3, 1887, § 4, 24 Stat. 552, 554-55.  In that act, Congress again inserted language to limit a national bank's access to the federal courts, but this time stated that "in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State."  Id. (emphasis added).  Thus, the first act that used the term "located" in this context simultaneously removed the express reference to state banks, substituting instead language creating parity between national banks and "individual citizens."

The concept of "principal place of business" as a test for corporate citizenship did not arise until 1958, when 28 U.S.C. § 1332(c)(1) was first enacted.  See An Act of July 25, 1958, Pub. L. No. 85-554, 72 Stat. 415; S. Rep. No. 85-1830 (1958), as reprinted in 1958 U.S.C.C.A.N. 3099, 3101-02.  That section provides in relevant part:  "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business..."  Prior to the passage of § 1332(c)(1) in 1958, the "long standing and thoroughly imbedded" rule was that "a corporation, for the purposes of jurisdiction, [was] deemed a citizen of the state in which it [was] incorporated."  See S. Rep. No. 85-1830, 1958 U.S.C.C.A.N. at 3101 (citing St. Louis & S.F. Ry. Co. v. James, 161 U.S. 545 (1896)).  The issue, then, is whether the term "located" in § 1348, the current version of which was enacted in 1948, can be interpreted to include the concept of "principal place of business," which was first introduced in 1958 as a basis for citizenship for state corporations.

The most relevant time period for determining a statutory term's meaning is the time when the statute was enacted.  See MCI Telecommunications Corp. v. Am. Telephone and Telegraph Co., 512 U.S. 218, 228 (1994); Perrin v. United States, 444 U.S. 37, 42-45 (1979).  In considering legislative purpose, courts must consider the legislative intent at the time of the statute's

enactment.  See, e.g., Ngiraingas v. Sanchez, 495 U.S. 182, 187 (1990).

There is nothing in the text of § 1348 that suggests that the word "located" changes its meaning in § 1348 depending on the citizenship of state banks.  While "located" may have different meaning in different statutes depending on the context in and purpose for which it is used, see Wachovia Bank, 126 S. Ct. at 951, the statute does not suggest that the word "located" was intended to have a meaning in § 1348 that changed over time. The statute should thus be interpreted consistent with congressional intent at the time it was enacted, and at that time, the modern concept of principal place of business, which originated with the passage of § 1332(c)(1) ten years later, was not a test for citizenship for any corporation, including state banks.

If Congress intended to achieve jurisdictional parity between national and state banks for all times in § 1348, and thus to include principal place of business as a location for a national bank when it became a basis for citizenship for a state bank, Congress could have provided for that in the statutory language.  Indeed, several of § 1348's statutory predecessors contained express language that would have supported an argument for incorporating by reference subsequent changes to the citizenship of state banks or individual citizens.  See, e.g.,

16

Act of July 12, 1882, § 4, 22 Stat. 163 (providing that the
jurisdiction for suits involving national banking associations
"shall be the same as, and not other than, the jurisdiction for
suits by or against banks not organized under any law of the
United States...."); Act of March 3, 1887, § 4, 24 Stat. 552,
554-55 ("the circuit and district courts shall not have
jurisdiction other than such as they would have in cases between
individual citizens of the same State"); Act of August 13, 1888,
§ 4, 25 Stat. 433, 436 (same).  However, all such language that
expressly invoked the concept of parity was removed in 1911,
well before the current version of the statute was enacted.  See
Act of March 3, 1911, § 24 (Sixteenth), Pub. L. No. 61-475, 36
Stat. 1092-93.

     In fact, the language that expressly established parity
between national banks and state banks was removed in 1887, when
the language was changed to create jurisdictional parity between
national banks and "individual citizens."  See Act of March 3,
1887, § 4, 24 Stat. 552, 554-55.  This change undermines the
argument that the concept of jurisdictional parity underlying §
1348 is a broad concept designed to trace statutory changes to
the citizenship of state banks through the term "located."
Rather, it suggests that the concept of jurisdictional parity
underlying the statute is more limited, based on the then-
existing understanding of citizenship, which would have been a

single state for either state banks or individual citizens. This language certainly clarified that national banks would not have access to the federal courts simply because they possessed federal charters.  See, e.g., Petri v. Commercial Nat'l Bank of Chicago, 142 U.S. 644, 650-51 (1892); see also supra note 8. However, given these changes to the statutory language, which occurred well before the current version of § 1348 was adopted in 1948, the term "located" cannot be read as incorporating the definition of citizenship for state banks into the statute by reference.

This interpretation is supported by the position taken by the Government at oral argument in Wachovia Bank.  The Solicitor General's Office, arguing on behalf of the United States and the Office of the Comptroller of the Currency in Wachovia Bank, rejected the position that principal place of business should be a test for where a national banks is "located."  At oral argument, the Government stated:  "[W]e don't think that a national banking association is a citizen of the State in which its principal place of business is found, insofar as that might be different from the State in which its main office is located."  Transcript of Oral Argument, 2005 WL 3358081, at *20-21, Wachovia Bank, 126 S. Ct. 941 (No. 04-1186).  The Government explained:

> [I]n part, that's because of the historical
> chronology. The word located was first used in 1887
> and the current version of section 1348 was enacted in
> 1948, which was 10 years before the concept of
> principal place of business had any jurisdictional
> salience. That was the first time that Congress—this
> was in 1958—that Congress enacted a specific provision
> dealing with corporate citizenship, and that's the
> first time that we see the concept of principal place
> of business having relevance in the jurisdictional
> context.

Id. at *21.[9]

### 2.

Prior to the Supreme Court's opinion in Wachovia Bank, the
Courts of Appeals for the Fifth and Seventh Circuits had
determined that the term "located" in § 1348 should be
interpreted to include a national bank's principal place of
business in order to maintain jurisdictional parity between
national and state banks and corporations. See Horton, 387 F.3d
at 431; Firstar, 253 F.3d at 993-94. Only the Firstar court
mentioned the interpretive difficulty raised by the historical
chronology. In a footnote, the court observed: "Interpreting
28 U.S.C. § 1348, the current version of which was promulgated
in 1948, by referencing 28 U.S.C. § 1332(c)(1), enacted ten
years later in 1958, might strike some as incongruous." 253

---

[9] In an interpretive letter, the Office of the Comptroller of the Currency had
concluded that a national bank was located in the state in which its main
office was located as designated in its articles of association and the state
in which its principal place of business is located. See OCC Interp. Ltr.
952 (Oct. 23, 2002) at 5-6. For the reasons explained above, this position
is inconsistent with the position of the Government as explained at oral
argument and is not entitled to deference, particularly because it is not
supported by the text of the statute.

F.3d at 993 n.5.  However, the court reasoned that the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute."  Id. (citing United States v. Fausto, 484 U.S. 439, 453 (1988) and Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 786 n.17 (2000)).  However, neither Fausto nor Vermont Agency, the cases cited in the Firstar decision, supports an interpretation of § 1348 that incorporates the concept of "principal place of business" from an unrelated statute enacted ten years after § 1348 was enacted.

In Vermont Agency, the later act at issue was enacted at "virtually the same time as the [earlier act] was amended" and the scope of the two statutes was "virtually identical."  529 U.S. at 786 n.17.  The Supreme Court explained that "there is no question that the [later act] was designed to operate in tandem with the [earlier act]."  Id.  None of the circumstances that justified the Court's interpretation in Vermont Agency are present here.  As explained above, § 1348 and § 1332 were not enacted at virtually the same time and do not have virtually identical scope.  There is nothing to indicate that these statutes were designed to operate in tandem.

In Fausto, the Supreme Court determined that the Civil Service Reform Act of 1978 ("CSRA"), which created a comprehensive scheme for evaluating certain federal government personnel decisions, including prescribing the availability of administrative and judicial review for those decisions, displaced the prior judicial interpretation of the Back Pay Act (an earlier act) that had allowed Court of Claims review of such decisions. 484 U.S. at 453-54. The Supreme Court rejected the applicability of the principle of statutory construction disfavoring repeal or amendment by implication, stating that the strong presumption created by that canon does not apply to the "repeal by implication of a legal disposition implied by a statutory text." Id. at 452-53 (emphasis added).

The question in Fausto was whether the Court of Claims remained an "appropriate authority under applicable law," for purposes of the Back Pay Act, to review certain agency personnel decisions. See id. at 454. The Court determined that, in light of the comprehensive review scheme created by the CSRA, the Court of Claims was no longer an "appropriate authority under applicable law." See id.

In this case, there is nothing in the text or legislative history of § 1332(c)(1) to suggest that Congress intended the statute to alter or amend, expressly or impliedly, § 1348 in any way. There is no clear repugnancy between these statutes. As

discussed below, these statutes are perfectly consistent with one another.

Moreover, the plaintiffs' argument in this case is not so much that § 1332(c)(1) altered or amended § 1348, but rather, that § 1348 essentially incorporates § 1332(c)(1) by reference because of § 1348's legislative intent to maintain jurisdictional parity between national and state banks.  It would be appropriate to interpret an earlier enactment in light of a subsequent enactment where the earlier enactment incorporates the subsequent enactment by reference.  However, the initial question in such a case is whether there is any basis for interpreting the earlier enactment to incorporate the subsequent enactment by reference.  For all the reasons already discussed, there is no basis for construing the term "located" in § 1348 in this way.

Therefore, because neither the statutory text nor the legislative history support reading the term "located" in § 1348 to incorporate by reference a concept that did not exist until ten years later, a national bank is not also "located" in the state where it maintains its principal place of business, when that state is different from the state of the national bank's main office.

**3.**

Because § 1348 cannot be construed to include a national bank's principal place of business as a basis for citizenship, the last question is whether § 1332(c)(1), standing alone, could be interpreted to apply to national banks.

"[I]t is a commonplace of statutory construction that the specific governs the general." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384-85 (1992). "[W]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987) (citation omitted).

In this case, § 1348 is a specific provision that precisely defines the citizenship of national banking associations. On the other hand, § 1332(c)(1) is a general provision governing the citizenship of corporations for diversity purposes generally. There is no clear indication that Congress ever intended to extend the general provision of § 1332(c)(1) to national banks. On the contrary, the language in § 1332(c)(1) appears not to apply to national banks because it provides that a corporation shall be deemed to be a citizen of "any State by which it has been incorporated."[10] National banking

_____

[10] In addition, the concerns that motivated the passage of § 1332(c)(1) would not seem to extend to national banks, either as national banks existed when that provision was first enacted in 1958 or today. Section 1332(c)(1) had

associations, which are federally chartered entities, are not
incorporated by "any State." See <u>Wachovia Bank</u>, 126 S. Ct. at
944-45.  Therefore, given that Congress has "discretely
provided" for the citizenship of national banks in § 1348, <u>id.</u>
at 945, the more general provision of § 1332(c)(1) does not
apply to national banking associations.

---

essentially two purposes:  first, reducing the workload of the federal courts
and, second, eliminating the legal fiction of corporate citizenship that gave
rise to the "evil whereby a local institution, engaged in a local business...
is enabled to bring its litigation into the federal courts simply because it
has obtained a corporate charter from another state." See S. Rep. No. 85-
1830 (1958), <u>as reprinted in</u> 1958 U.S.C.C.A.N. 3099, 3101-02.

However, in 1958, with rare exceptions, national banks were confined to
conducting branch operations within a single state.  See <u>Wachovia Bank</u>, 126
S. Ct. at 945 n.2, 949.  It was not until 1994 that Congress gave national
banks broad authority to establish interstate branches.  See <u>id.</u>  Thus, in
1958, the "evil" that Congress referred to would not have applied to national
banks, which were, in almost all cases, wholly local institutions.  In
addition, given that national banks were almost always located in only one
state, the creation of dual citizenship would have had no impact on the
workload of the federal courts with respect to national banks.

At present, based on the Supreme Court's decision in <u>Wachovia Bank</u>, a
national bank is a citizen of the state where its main office is located,
which must be a "place where its operations of discount and deposit are to be
carried on."  See <u>Wachovia Bank</u>, 126 S. Ct. at 945 n.1.  This requirement
precludes a national bank from becoming a citizen of a state solely on the
basis of something akin to charter location, and thus avoids the legal
fiction that concerned Congress in 1958.  Finally, as the Supreme Court noted
in footnote nine, the issue "may be of scant practical significance for, in
almost every case... the location of a national bank's main office and of its
principal place of business coincide," <u>id.</u> at 951 n.9, suggesting that
concerns about the workload of the federal courts may be more theoretical
than actual, even today.  See <u>supra</u> note 6.

## CONCLUSION

The remaining arguments of the parties are either moot or without merit.  For the reasons stated above, the plaintiffs' motion to remand is **denied**.

**SO ORDERED.**

**Dated:      New York, New York**
**November $27$, 2006**

**John G. Koeltl**
**United States District Judge**

25