**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**EXCELSIOR FUND, INC., and EXCELSIOR FUNDS TRUST,**

                  **Plaintiffs,**

    **- against -**

**JP MORGAN CHASE BANK, N.A.,**

                  **Defendant.**

**06 Civ. 5246 (JGK)**

**OPINION AND ORDER**

------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiffs Excelsior Fund, Inc. ("EFI") and Excelsior Funds Trust ("EFT") are two mutual funds that purchased Notes issued by Frontier Corporation under an Indenture Agreement for which the defendant JP Morgan Chase Bank, N.A. ("JPMC") served as Indenture Trustee. The plaintiffs purchased these Notes at various times before and after Frontier's successor company, Global Crossing North America, Inc. ("Frontier/GCNA") filed for bankruptcy on January 28, 2002. The plaintiffs allege that in a variety of ways JPMC breached its obligations as the Indenture Trustee and also as the Collateral Trustee under two sets of subsequent trust and pledge agreements entered into for the benefit of the Frontier Noteholders among others. In essence, the plaintiffs allege that after Frontier merged with GCF Acquisition in 1999 and became Frontier/GCNA, JPMC failed to take steps to protect the Noteholders during a series of loan and sales transactions that divested Frontier/GCNA of

substantially all of the assets and operations that it could have used to pay off the plaintiffs' Notes.

The plaintiffs assert claims against JPMC for (1) breach of the Indenture Agreement (first cause of action); (2) breach of the first and second Collateral Trust and Pledge Agreements (second and third causes of action); (3) breach of the implied covenant of good fair and fair dealing (fourth cause of action); and (4) breach of fiduciary duty (fifth cause of action).

The plaintiffs originally filed this action in the New York State Supreme Court, New York County, and JPMC removed it to this Court. The Court previously denied a motion to remand to state court. Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A., 06 Civ. 5246, 2006 WL 3420625 (S.D.N.Y. Nov. 27, 2006). Before the Court now is JPMC's motion to dismiss the first, fourth, and fifth causes of action.[1] The plaintiffs have cross-moved to amend their Complaint by adding a new legal basis for the breach of contract claim based on the Indenture Agreement.

For the reasons explained below, JPMC's motion is **granted** with respect to the fourth cause of action, for breach of the implied covenant of good faith and fair dealing, but the motion is **denied** with respect to the remaining claims. The plaintiffs'

---

[1] JPMC also moved for summary judgment dismissing the second and third causes of action but withdrew that motion without prejudice to its renewing the motion at a later time upon a fuller record.

2

cross-motion is **granted** and the plaintiffs may file an Amended Complaint.

**I.**

**A.**

For the limited purposes of deciding the motion to dismiss, the relevant facts are as follows.

The former telecommunications company Frontier Corp. issued 7.25% Notes pursuant to an Indenture Agreement dated May 21, 1997.  Frontier then issued 6% Notes pursuant to a First Supplement to the Indenture dated December 8, 1997.  JPMC served as the Indenture Trustee under the Indenture Agreement.  (Compl. ¶¶ 6, 8-10.)  Frontier was acquired by Global Crossing Ltd. ("GCL") in September 1999 and became its subsidiary under the new name Global Crossing North America ("Frontier/GCNA").  (Id. ¶ 17.)

Various Global Crossing entities, including Frontier/GCNA, filed chapter 11 bankruptcy petitions in the U.S. Bankruptcy Court for the Southern District of New York on January 28, 2002. (Id. ¶ 45.)  Shortly before the filing, JPMC resigned its position as Indenture Trustee and selected Wilmington Trust Co. as its successor.  (Id. ¶ 46.)

The plaintiff EFI purchased 6% Notes of Frontier/GCNA in the principal amount of $55,644,000 between March 2, 2001 and

June 24, 2002. EFI sold $17,500,000 in principal amount of these Notes at a loss, but it continued to hold $15,144,000 in principal amount of the 6% Notes through the period of GCL's bankruptcy, when the Notes were in default. Pursuant to GCL's bankruptcy plan, EFI received a distribution consisting of $35,062 in cash and stock, and EFI sold the stock for $1,269,065. (Id. ¶ 8.)

EFI also purchased 7.25% Notes of Frontier/GCNA in the principal amount $45,530,000 between October 24, 2001 and June 24, 2002. EFI later sold $26,450,000 principal amount of those Notes at a loss. (Id. ¶ 9.) The plaintiff EFT purchased 7.25% Notes of Frontier/GCNA between December 13, 2001 and January 11, 2002 in the principal amount of $11,000,000. EFT later sold $3,850,000 in principal amount of those Notes at a loss. (Id. ¶ 10.)

Both EFI and EFT made additional sales of Notes they held on September 18, 2003. Because the plaintiffs assigned their rights and claims in connection with these sales, those Notes do not form a basis for any of the claims in the Complaint. (See id. ¶¶ 8-10.) At the time this action was brought, EFT no longer held any Notes, and EFI continued to hold only $15,144,000 principal amount of 6% Notes at that time.

The Indenture Agreement pursuant to which the Notes issued provides that it is to be governed by and construed in

4

accordance with the laws of New York and, to the extent applicable, provisions of the Trust Indenture Act of 1939 ("TIA), 15 U.S.C. § 77aaa et seq.  (Compl. ¶ 11; Indenture Agreement § 112, Ex. 2 to Decl. of Sarah L. Reid, July 18, 2006.)  Both the 7.25% and the 6% Notes provide that they are "governed and construed in accordance with the law of the state of New York."  (Exs. A & B to Decl. of Arthur M. Handler, Jan. 11, 2007.)

During JPMC's tenure as Indenture Trustee, the plaintiffs allege that it failed to protect the interests of the Noteholders and, rather, assisted in transactions that resulted in substantial remuneration for JPMC itself.

When Frontier was acquired by GCL, it became a co-borrower under a pre-existing $3 billion credit facility between JPMC, GCL, and Global Crossings Holdings Ltd. ("GCHL") that dated from July 2, 1999.  (Compl. ¶ 21.)  JPMC served as administrative agent for a syndicate of lenders in this financing transaction and was itself one of the lenders under the July 2, 1999 Original Credit Agreement and under a later Amended Credit Agreement.  (Id. ¶¶ 22-25.)

In December 1999, Frontier/GCNA sold to Bell Atlantic its 50% ownership in Frontier Cellular, a joint venture between Frontier and Bell Atlantic, for approximately $412 million.  (Id. ¶ 28.)  In January 2001, Frontier/GCNA's unit GlobalCenter,

5

Inc. was sold to Exodus Communications for 108.2 million common shares of Exodus.  Those shares declined in value to $0 within less than a year.  (Id. ¶ 29.)

Prior to this sale, on August 15, 2000, JPMC entered into a Collateral Trust Agreement and Shared Collateral Pledge Agreement under which stock of a GCL subsidiary was pledged for the benefit of Frontier Noteholders.  (Id. ¶ 30.)  Under this Collateral Trust Agreement, the plaintiffs allege that JPMC had responsibilities as Collateral Trustee to the Frontier Noteholders as well as to itself as a lender, administrative agent, and issuing bank under the Amended Credit Agreement.  (Id. ¶ 33.)

On June 29, 2001, Frontier/GCNA sold a core unit, its incumbent local exchange carrier ("ILEC") business, to Citizens Communications Company ("Citizens").  (Id. ¶¶ 5, 36.)  Citizens did not assume Frontier/GCNA's obligations to pay the Frontier Notes and to abide by the covenants and other terms of the Indenture Agreement.  JPMC did not obtain an Officers' Certificate or Opinion of Counsel in connection with the Citizens sale.  (Id. ¶ 38.)  JPMC solicited the bids for the sale and assisted in structuring it.  (Id. ¶ 42.)  Approximately $1.5 billion from the sale proceeds was paid to JPMC and other lenders, but none of the proceeds were used to repay the Frontier Notes.  (Id. ¶¶ 38-40.)

6

On December 18, 2001, JPMC entered into another Collateral Pledge Agreement and Collateral Trust Agreement with Frontier/GCNA, its subsidiary ALC Communications Corp., and another subsidiary named Global Crossing Telecommunications, Inc.  (Compl. ¶¶ 31, 44.)  JPMC did not enforce or foreclose upon the lien it held against the stock that served as collateral under that Agreement for the benefit of the Frontier Noteholders.  (Id. ¶ 47.)

**B.**

On a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiffs' favor.  Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  Therefore, the defendant's present motions should only be granted if it appears that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514

7

(2002) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Grandon, 147 F.3d at 188; Goldman, 754 F.2d at 1065.

While the Court should construe the factual allegations in the light most favorable to the plaintiff, the Court is not required to accept legal conclusions asserted in the Complaint. See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002); Barile v. City of Hartford, 386 F. Supp. 2d 53, 54 (D.Conn.2005).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

**II.**

**A.**

With respect to the first claim for breach of the Indenture Agreement, the defendant focuses its motion on a lack of standing to bring suit.  In the original Complaint, the plaintiffs assert that they have standing under New York General Obligations Law Section 13-107, which provides that "[u]nless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer, whether or not such claims or demands are known to exist . . . ."  Claims "for damages against the trustee . . . under any indenture under which such bond was issued or outstanding" are expressly included.  N.Y. Gen. Oblig. Law § 13-107(1).  While the plaintiffs did not acquire any of the Notes until 2001 at the earliest, after at least some of the alleged wrongful acts had occurred, they assert that this New York statute transferred to them the right to sue JPMC for wrongs it committed as the Indenture Trustee while prior owners held the Notes.

**1.**

The defendant argues first that the plaintiffs lack standing to assert claims based upon the Notes that they have sold because those rights passed to the new holders of the Notes

9

pursuant to the very statute, N.Y. Gen. Oblig. Law § 13-107, upon which the plaintiffs rely.  See Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 767 N.E.2d 672, 674-75 (N.Y. 2002). The plaintiffs concede this lack of standing under § 13-107, but they seek leave to amend their Complaint to add a new Second Cause of Action under Section 315 of the TIA based upon the shares they have sold without an assignment of rights.

Section 315 imposes liability on an indenture trustee for failure to perform the duties that are specifically set out in the indenture prior to a default, 15 U.S.C. § 77ooo(a), and upon default it requires the trustee to "exercise . . . such of the rights and powers vested in it by [the] indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs."  § 77ooo(c).  Under the TIA, the right to sue is granted "to those who actually suffered the injury," and that right is not automatically assigned upon transfer of the note.  Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 896 F. Supp. 152, 156 (S.D.N.Y. 1995), aff'd, 85 F.3d 970 (2d Cir. 1996).

JPMC contends that the plaintiffs have failed to allege standing under the TIA for their proposed claim relating to the Notes they have already sold because the proposed Amended Complaint does not state with particularity the Notes the

10

plaintiffs held when JPMC's alleged breaches occurred.  JPMC construes the injuries the plaintiffs alleged as resulting from JPMC's alleged wrongful acts that occurred no later than the sale of Frontier/GCNA's ILEC business on June 29, 2001, and it argues that the Amended Complaint does not establish clearly that the plaintiffs held any of the Notes on or before that date, and did not subsequently sell them with an assignment of rights.  This argument is unavailing for two reasons.

    First, the plaintiffs are not required to plead the dates of every purchase with particularity, as the defendants contend.  The plaintiffs need only meet the standard of Federal Rule of Civil Procedure 8, which requires that they "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512 (quoting Conley v. Gibson, 335 U.S. 41, 47 (1957)); see also Greater N.Y. Auto. Dealers Assoc. v. Envtl. Sys. Testing, Inc., 211 F.R.D. 71, 77 (E.D.N.Y. 2002) (complaint lacking date on which contract was entered into sufficient under Rule 8 ); In re Revlon, Inc. Sec. Litig., 99 Civ. 10192, 2001 WL 293820, at *8 (S.D.N.Y. Mar. 27, 2001) (precise dates not needed even under more stringent Rule 9(b) requirements for pleading fraud).  The plaintiffs allege that EFI began purchasing 6% Notes in March of 2001, before the June 2001 date upon which the defendant relies.

11

Second, JPMC's argument fails because it ignores other acts subsequent to the sale of Frontier/GCNA's ILEC business that are alleged to have injured the plaintiffs. (See Am. Compl. ¶¶ 48-51.)  At this stage prior to discovery, these pleadings are sufficient to meet the requirements of Rule 8.  Rule 15(a) provides that leave to file an amended complaint should be "freely given."  See Foman v. Davis, 371 U.S. 178, 182 (1962). The plaintiffs' cross-motion to amend their Complaint to clarify their theory of recovery based on the TIA is therefore **granted**.

**2.**

With respect to the 6% Notes that EFI alleges it still holds, JPMC argues that the plaintiffs have not sufficiently established EFI's standing to sue under New York General Obligations Law § 13-107 because they have not alleged that New York law governed each of the transfers of the Notes before EFI purchased them.  JPMC relies primarily on two cases, Semi-Tech Litigation LLC v. Bankers Trust Co., 272 F. Supp. 2d 319, 330 (S.D.N.Y. 2003), and Racepoint Partners, LLC v. JPMorgan Chase Bank, 06 Civ. 2501, 2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006), in support of its argument that the Court should dismiss the § 13-107 claim for a failure to establish that New York law governs each prior transfer of the Notes.  JPMC's reliance on these cases, however, is misplaced.

In Semi-Tech, Judge Kaplan in fact denied a motion to dismiss because he could not determine from the complaint whether New York law controlled each contract of sale of the notes at issue before the plaintiff acquired them.  272 F. Supp. 2d at 330.  Unlike this case, in Semi-Tech the plaintiff provided no evidence that the notes at issue contained a New York governing law clause, and Judge Kaplan merely observed that the governing law clause in the indenture had "no relevance" to whether rights of action were assigned under contracts of sale of the notes.  Id. (quoting In re Nucorp Sec. Litig., 772 F.2d 1486, 1492 (9th Cir. 1985)).  In Racepoint, Judge Cedarbaum similarly found the facts alleged in the Complaint insufficient to determine whether New York law governed every prior transfer of the notes at issue, and the plaintiffs sought further discovery to determine whether New York choice of law rules would have applied New York substantive law to each prior transfer of the notes.  2006 WL 3044416 at *4-*5.  Judge Cedarbaum dismissed the complaint with leave to amend and granted discovery on the issue of which law governed all prior transfers of the notes.  Id. at *5.  JPMC, which was also the defendant in Racepoint, has submitted a copy of the notes at issue in that case to show that they contained a New York governing law provision like the one expressly included in the Frontier Notes (see Ex. 1 to Decl. of Sarah L. Reid, Feb. 9,

13

2007, at ¶ 9), but there is no reference to this provision in Judge Cedarbaum's decision and no indication that the parties made an argument based on this provision.

As Judge Kaplan found in Semi-Tech, it is inappropriate to dismiss the claim predicated on § 13-107 at this stage where there is no showing that New York law did not govern each prior transfer of the Frontier Notes at issue.  Moreover, the plaintiffs have shown that the Frontier Notes include an express New York governing law provision.  Where a contract contains a New York governing law provision and where the transaction involves more than $250,000, as was likely the case here, New York General Obligations Law § 5-1401 provides that the choice of law provision is controlling.  See Bank of America Nat'l Trust & Sav. Assoc. v. Envases Venezolanos, S.A., 740 F. Supp. 260, 264-65 (S.D.N.Y. 1990).  As in Semi-Tech, the parties can brief after any appropriate discovery whether New York choice of law rules indicate that New York substantive law applies such that EFI has obtained the right to pursue the claims of the prior holders of the Notes.

The motion to dismiss the first claim is therefore **denied**.

**B.**

JPMC argues that the claim asserting a breach of the implied covenant of good faith and fair dealing should be

14

dismissed as duplicative of its breach of contract claim.  The implied covenant, which is read into every contract under New York law, is not distinct from the contract itself.  <u>Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.</u>, 98 Civ. 6907, 2000 WL 335557, at *8 (S.D.N.Y. Mar. 30, 2000).  A claim for breach of the implied covenant can be maintained simultaneously with a breach of contract claim "only if the damages sought by the plaintiff[s] for breach of the implied covenant are not 'intrinsically tied to the damages allegedly resulting from breach of contract.'"  <u>Id.</u> (quoting <u>Canstar v. J.A. Jones Constr. Co.</u>, 622 N.Y.S.2d 730, 731 (App. Div. 1995)); <u>see also</u> <u>Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.</u>, 06 Civ. 52, 2006 WL 2337186, at *12 (S.D.N.Y. Aug. 11, 2006) (dismissing implied covenant claim as duplicative of contract claim); <u>Concesionaria DHM, S.A. v. Int'l Fin. Corp.</u>, 307 F. Supp. 2d 553, 563-65 (S.D.N.Y. 2004).  The plaintiffs argue that <u>Chase Manhattan Bank, N.A. v. Keystone Distribs., Inc.</u>, 873 F. Supp. 808, 815-16 (S.D.N.Y. 1994), supports the proposition that a breach of the implied covenant should not be dismissed as duplicative of a breach of contract claim.  In that case Judge Leisure dismissed the claims based on breach of an express contract provision on summary judgment and allowed a separate breach of the implied covenant claim to survive.  Since no

duplication of claims resulted, the case does not support the plaintiffs' position.

The plaintiffs' attempt to distinguish their implied covenant claim from the contract claim are not sufficient to merit its survival. The same factual allegations underlie both claims, and it is apparent in particular that the damages sought in connection with the implied covenant claim are really the same damages alleged in the breach of contract claim. Page Mill, 2000 WL 335557 at *8; see also Argonaut P'ship L.P. v. Bankers Trustee Co., 96 Civ. 1970, 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001). The fourth claim, for breach of the implied covenant of good faith and fair dealing, is therefore **dismissed**.

C.

JPMC contends that the breach of fiduciary duty claim should be dismissed as duplicative of the breach of contract claim and untimely under the relevant statute of limitations.

JPMC argues that the breach of fiduciary duty claim fails to allege the breach of any duty apart from the specific duties stated in the Indenture Agreement and therefore cannot survive. See Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd., 03 Civ. 5539, 2004 WL 1444868, at *8 (S.D.N.Y. June 25, 2004). JPMC points to provisions in the indenture that required it to avoid

16

conflicts of interest and to disclose material facts to the Frontier Noteholders, and it argues that the duties alleged to be violated in the fiduciary duty claim are duplicative of these contractual duties.

The plaintiffs respond that a fiduciary duty claim can survive where the fiduciary duties derive from a contract but are broader than the contract itself. See Kwiatkowski v. Bear Stearns Co., 96 Civ. 4798, 1997 WL 538819, at *6 (S.D.N.Y. Aug. 29, 1997); Mandelbratt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (App. Div. 1987). This is particularly so when the fiduciary duty claim is grounded in allegations of fraud. See Kwiatkowski, 1997 WL 335557 at *6-*7. The plaintiffs argue that JPMC's fiduciary duties extended beyond its contractual duties to prohibit for example its receipt of proceeds from the Citizens Sale while leaving nothing for the Frontier Noteholders despite its conflicting role as a lender and financial advisor in the sale. The plaintiffs assert that neither the Indenture nor the TIA specifically addresses the conflict of interest that arose when the Indenture Trustee, JPMC, also acted as a participating lender and financial advisor with a financial incentive in competition with that of the Noteholders. The Complaint also can be read to support allegations of fraudulent concealment. (E.g., Compl. ¶¶ 74-78.)

17

While the question is a close one, the Court cannot find at this stage that the plaintiffs' breach of fiduciary duty claim is merely duplicative of their breach of contract claim. See LaBarte v. Seneca Res. Corp., 728 N.Y.S.2d 618, 622 (App. Div. 2001).

JPMC also argues that the fiduciary duty claim must be dismissed as untimely because the action was filed on June 12, 2006, more than three years after JPMC resigned as Indenture Trustee and performed any relevant act or omission. New York does not provide a single limitations period for fiduciary duty claims, but instead generally applies a six-year period when the relief sought is equitable and a three-year period when only money damages are sought. Kaufman v. Cohen, 760 N.Y.S.2d 157, 164 (App. Div. 2003). However, "the case law in New York clearly holds that a cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period." Id.; see also Pro Bono Invs., Inc. v. Gerry, 03 Civ. 4347, 2005 WL 2429787, at *14 (S.D.N.Y. Sept. 30, 2005). This fraud limitations period will not apply where the allegation of fraud "is only incidental to the claim asserted." Kaufman, 760 N.Y.S.2d at 165.

The plaintiffs appear to base their breach of fiduciary duty claim at least in part on fraudulent concealment. In particular, the plaintiffs argue that a breach arose from JPMC's

18

fraudulent concealment of its financial interest in the Citizens Sale.  Where, as here, the plaintiffs plead a fiduciary relationship and an intent to deceive (see Compl. ¶ 75), the failure to disclose facts that one had a duty to disclose may be found to constitute actual fraud.  See Whitney Holdings v. Givotovsky, 988 F. Supp. 732, 748 (S.D.N.Y. 1997); Kaufman, 760 N.Y.S.2d at 165.

In its brief in reply on its motion to dismiss and in opposition to the cross-motion for leave to amend, JPMC counters the plaintiffs' argument that the six-year limitations period for fraud should apply by claiming that certain public disclosures undermine any allegations of fraudulent concealment. The plaintiffs deny that any public disclosures reveal the full extent of JPMC's scheme to benefit to their detriment, and at any rate this argument is raised for the first time in a reply brief and has not been sufficiently briefed to allow the Court to reach a conclusion.

JPMC's motion to dismiss the breach of fiduciary duty claim is therefore **denied.**

## CONCLUSION

For the reasons explained above, the fourth cause of action, for breach of the implied covenant of good faith and fair dealing, is **dismissed**.  In all remaining aspects, JPMC's

19

motion to dismiss is **denied**.  The plaintiffs' cross-motion for leave to file an amended complaint asserting a claim under the TIA is **granted**.

SO ORDERED.

Dated:   New York, New York
         March 22, 2007

_____
John G. Koeltl
United States District Judge

20